Good morning, Your Honors. Ron Holt, appearing for the appellants, National Career College, Alan Mirzai and his sons, Nima and Raymond Mirzai. I would like to reserve three minutes, please. Your Honors, the American journalist, Sidney Harris, once said that there's no point in burying a hatchet if you're going to erect a marker over the site. And that's exactly what the U.S. Department of Education did here with Alan Mirzai and these allegations about forgery being committed at Computer Business College in California. They've taken those disputed and settled and dismissed allegations and they've erected a billboard over that buried allegation and resurrected it and used it against Mr. Mirzai in denying approval for him to become the controlling owner of Hawaii Business College. So Mr. Holt, back in 1993, Mr. Mirzai agreed to a voluntary department until 2002, agreed to pay back $55,901 in missing funds which belonged to students under the federal government. And you say that that was not an admission of guilt. He agreed to pay liabilities, not missing funds. You have to recall that there were two issues here. There was what was called a final program review determination in which there was an allegation that $2.2 million in funds were misspent. And there are a lot of ways to misspend funds. That is, you can over-award a student, you can fail to return enough money. It has nothing to do with issues of integrity, but it's important to note it went from $2.2 million to $60,000 and, yes, it was paid. But the pivotal factual finding in that investigation or hearing back in 1993 was that some audited financial statements purportedly signed by a public accountant had been, indeed, not signed by the public accountant, but had been signed by Mr. Mirzai using the public accountant's name, the case which would suggest forgery. A more correct way to state that, Your Honor, was that the allegation was made that those statements were forged and that they were submitted by Computer Business College and that Mr. Mirzai was in control of the college. There was no admission of guilt. The settlement agreement says just the opposite. There was a debarment complaint which alleged what you just said and said that Mr. Mirzai, because of these things that we believe are true, you lack integrity to handle federal money. What happened? Mr. Mirzai disputed it. He submitted declarations from himself and from his staff. He got ready for a hearing that was set before an administrative law judge, an independent fact finder, where he could call witnesses and confront the government's witnesses. He settled that case in exchange for what he thought was getting a complete dismissal. In fact, the settlement agreement says, and the administrative law judge, in fact, did, a dismissal with prejudice. But it also says, this agreement does not affect any other civil or criminal investigation of CBC Computer Business College, its owners, agents, or employees, which would include Mr. Mirzai, by the Department of Education, or any action resulting from such investigation. And the government does not allege, in this case, Your Honor, that they initiated any other investigation. There was this investigation. Well, when there was this application to certify Mr. Mirzai's recently purchased business, the functionary who looked at the application did some investigation to determine Mr. Mirzai's background. That's an investigation, isn't it? You would torment the use of the word other if you believe that. The word other used in this agreement says, other than this investigation. There was an investigation in 1997 and 1998. It led to a debarment complaint that alleged the very things you just said. That investigation, that complaint, that proceeding was settled, dismissed with prejudice, gone and done forever. This was not an other investigation. This was merely a resurrection of that whole ball of wax. Everything that was done back in 1998 and 1999 was being resurrected. There was no new investigation. But wasn't the purpose of the settlement agreement to avoid further proceedings regarding debarment? And why should we conclude that the Department can't consider allegations against Mr. Mirzai? Thank you. I didn't want to mispronounce it. In future evaluation, why shouldn't the Department consider the allegations against your client? Let me ask you this. If in fact he had gone forward with the adjudication and he had been found not guilty of these things, do you think they would have the permission then to consider these things and bring up a new investigation? Or would that be res judicata? And I think the answer is they would... Contrary, if they had found him guilty, he would have been debarred. Correct. And what do the debarment regs say? They say he can be debarred for a period of time fixed by the debarring official, normally three years, possibly more. And the government says you can keep him out of the government programs longer. You have to have new information. That was in the regs. It's in the case law. It's undisputed. What are they doing here? They're taking the same set of allegations and they're extending it informally, resurrecting it. He never had his day in court. Why would any defendant with half a brain enter into a settlement agreement like this if he thought it was going to be brought up all over again and he wouldn't have an opportunity in front of an independent fact finder to say he wasn't guilty? Well, let me ask you this. How do you respond to the Department of Education's argument that you have no entitlement to participate in a Title IV program and thus you cannot make out a due process claim? Well, the simple fact of the matter is we have a liberty interest and we've given you numerous cases in our briefs. They include the Art Metal case, the 1978 related industries case from the Court of Claims in 1983, the ATL case from the Court of Claims in 1983, the Leslie and Elliott case from the D.C. Circuit in 1978. Take one of those cases and give me the rule that you're proclaiming. Okay. Well, in the Art Metal case we were dealing with a vendor who sold filing cabinets to the GSA. There were allegations that he possibly had abused his contract dealings with the contract. Proposals he had made that were put on hold and the statement was made in the record of the case that the contracting official had indicated he had no intention of doing business with this individual. What the court said there was that while he may not have had a right to enter into a contract, he had a right not to be blacklisted from the opportunity to enter into a contract without reasonable procedural safeguards. Well, Mr. Mann probably gets certified so long as you don't own more than 25% of this company and so long as you're not in control of this company because we're not comfortable with you handling funds of the fiduciary in view of what you did back in 1993 and 1998. Yeah, but let's be realistic about it. The opportunity to make money in any business resides best with majority and controlling ownership. He's been deprived of that opportunity to make a living in this industry. I think anyone in any business would agree that if you're a minority shareholder, you don't control the show, you don't get the drive where things are going, you don't have the opportunity to take your investment and make it as profitable as possible. He's been deprived of that very important opportunity across the board. Sure, he can own a minority interest, but that's not the same thing as owning a majority. So for all intents and purposes, he has been deprived. These other cases are very similar. Related industries, a vendor of sleeping bags. But he hasn't been actually debarred. He's been told this application on this occasion will not be approved. If you own no more than 25%, it may well be approved. Is that debarment from any federal agency or just we don't like this application under the Department of Education? The essence of de facto debarment is being deprived of the opportunity to participate in an important form of contract dealing with the government. He has been deprived of the opportunity to be a controlling owner of an institution that has Title IV loans and grants for its students across the board. You read that letter on October the 10th, 2006 from Linda Henderson. She said, you cannot be trusted to be a fiduciary of federal funds. A month later, after the government was asked to reconsider in the November letter, 2006 from Mary Gus, she said the same thing. You can't be trusted. Why? Because of what you did back in the computer business college days. So that's a theme that runs throughout. You don't have integrity. And we're not going to make you a controlling owner of any institution unless you convince us that you have integrity. By the way, if debarment, then the burden shifts to the applicant to prove that he nonetheless is responsible. What the government has done here is said to him, if you read their briefs, we've found you to be debarrable. That cause exists for debarment now. If you want to get back in, you want to be a controlling owner, you have to prove to us that you're responsible. And they've announced this very broad standard about showing transformation of character, showing remorse, things like that. Remorse for acts that he claims he didn't commit. Remorse for acts that he's never had his day in court. Why didn't he settle? He settled like any defendant because it costs money to go forward. There is risk. Why did the government settle? If they had such a strong case, they might have been able to debar him for five years, some period longer than three years. Why do parties ever settle? Because they get certainty. They know what they're dealing with. They remove the risk. They remove the cost. They schedule, organize their lives, and they move on. That's what he did here. You seem so certain of his innocence that it seemed that it might have been in his best interest to go ahead and prove how innocent he was. Well, his institution at the time this was going on was applying for recertification. The institution had other issues relating to student loan defaults, and they had high default rates, and they were facing elimination anyway. And I think, Mr. Mears, I thought, you know what? It's not worth the fight. If I can close this chapter of my life, I'll give up my ownership in CBC. I'll do my time, so to speak, my three years of voluntary exclusion, and maybe I'll come back to the industry. And he didn't come back right away. He came back some, ultimately, four years later, seven years after all of these facts, in 2006. And that's the other problem with this. You know, you could conclude, as Mr. Wolf has suggested in his briefs for the government, you could get in court. He has been de facto debarred. Let's get in his day in court. Well, where are we today? It's 2010. We're 11 years after these facts allegedly occurred. But even when they resurrected this information in 2006, we were seven years down the road, almost eight years down the road from the relevant conduct. And so it becomes more difficult to find witnesses, the staff that were at the school. But at the time this was going on, when the debarment proceeding was going on, Mr. Mears, I had declarations from members of his staff saying that they didn't have anything to do with this. He himself said he didn't have anything to do with this. Obviously, somebody put signatures on there. We haven't admitted that they are forgeries, but we have acknowledged that they might be. And in our briefs, we've said that we do not concede that Mr. Mears, I did this. And he doesn't concede it either. He never has. But he hasn't had his day in court. Now, I will suggest to you that once they dismiss the case the way they did here and entered into this agreement, it's not fair for them to resurrect it now, and now giving this day in court some 11 years later. With that, I'll reserve the rest of my time. Let me ask you one question. We won't take away from the rest of your time. Is it your position that this one denial by the DOE constitutes clear evidence of de facto debarment? Absolutely. Because it falls within the cases we cited for you, like the ATL case related industries and art metal. Because those were cases where there was a single, one or two of them related industries. It was a mail carrier. There was a single denial. But the point was, it was based on an integrity determination that would run through any future contracts. We have that same thing here. We have an integrity determination by the government saying, we don't trust you. And nothing is more systemic than the finding that a person doesn't have integrity? Correct. Thank you, Your Honor. Your Honors, may it please the Court, my name is Russell Wolfe. I'm with the United States Department of Education's Office of General Counsel, and I'm here on behalf of the Secretary of the United States Department of Education. Every year, the Department receives and reviews more than 1,000 applications from institutions looking to participate in the Title IV programs authorized by the Higher Education Act, evaluates each one, and determines whether the institution has administrative capability and financial wherewithal to participate as its fiduciary in the receipt and dispersion of those funds on behalf of students who are seeking to pursue Well, there's no doubt in your mind, is there, that the one and the only reason why Mr. Mirzai was rejected for his application to act under Title IV was the 1993 allegations by the Department that he had forged the accountant's certification to three financial statements. Is that not right? Oh, absolutely, sir. All right. Now, let's take what Mr. Holtz said. That wasn't proved at that time. That was an allegation. It was denied. It was a disputed issue. And Mr. Mirzai settled that case with a payment that did not establish his admission of liability. And he was barred by the terms of that settlement until the year 2002. Why is that not a—why was your present denial not a systemic denial and a de facto debarment as far as the Department of Education is concerned? Your Honor, it's not a de facto debarment as far as the Department of Education is concerned, because the Department is not in any capacity debarring Mr. Mirzai. What the Department did was they evaluated one application that was submitted by a school. But the application was submitted—they evaluated one application from HPC, and they said, the reason we're not allowing the application is not because HPC doesn't have a nice campus. It's not because you don't have enough secretaries or enough photostatic machinery. They're saying the reason we're not allowing this is because you, Mr. Mirzai, have a character defect. You're a fraud. You're a forger. And we don't want you on our property. Right? If you come in with 25 percent of the company so somebody else runs the show, then we'll evaluate that somebody else's character. If you show remorse, if you transform, if you perhaps go into rehab, we might reconsider. But as things stand now, your character bars you from going forward. Why isn't that a de facto debarment? Because, Your Honor, we didn't say you can't participate based on your character. We gave him an opportunity to respond to our understanding of the facts of this school with his management structure, having somebody with that past, and whether or not we could trust initially someone with that past to serve as our fiduciary. And gave him the opportunity by giving him the denial letter to respond and present any evidence of any kind that says the character has been transformed. There is evidence of extenuation and mitigation. What would that evidence be? How could he prove that he's transformed his character? Well, Your Honor, that actually is something that comes up with some frequency in applications from schools that apply with ownership structures where one of the owners has had some kind of criminal past. They go through our preacquisition process and say, I'm thinking about pursuing a change of ownership with this school, and this is my past, and what do you need to see or what can I present in order for us to satisfy the criteria? I'm hearing, and correct me if I'm hearing wrong, are you making the point that Mr. Merzai, when he received that letter and was given the opportunity to present evidence at a further hearing of the Department of Education, failed to exhaust his administrative remedies? Is that what you're saying? No, no, Your Honor. No, he certainly satisfied his administrative remedies. He was not at this stage because we were dealing with an eligibility application, so there was not a hearing at this stage when the Department of Education denies an eligibility application. It presents, it provides notice of the reasons for the denial. It provides an opportunity to present written materials and explain or satisfy whatever conditions have been identified as the reason for denial, and then it issues a final decision. There's not a formal hearing at that stage. But you mentioned a criminal past, and he never admitted that he had forged, was never proven that he had forged. That's correct. It's not, again, it's important to note that, in fact, counsel for Mr. Merzai during the TRO hearing certainly acknowledged that these were forged documents. I don't think there's any question that those were forged documents. On page 285 of the materials that the respondent has put forward. But the question is whether he had done it. That's right. The question is not whether he had done it, and the Department of Education has never personally said that he did it. The school had forged documents. The school, when he was its 100 percent owner, submitted through him forged documents. Now, it's possible that he knows nothing about it. Sarbanes-Oxley didn't apply then, did it? I'm sorry, sir? Sarbanes-Oxley requires a CEO to certify financial statements. It didn't apply then. That's right. So the Department's position has been, if he did not know that he was submitting these documents, remember it was done twice. First, he submits the documents on behalf of the school on the letterhead of the CPA, but missing the CPA's signature. The department looks at those and says, these are sort of funny financial statements. They don't have notes to them, and the CPA didn't sign them. So the department sends them back to Mr. Merzai and says, we can't accept these because they haven't been authenticated. They look peculiar. Then the next thing we know, we get them back again from Mr. Merzai, and this time they're signed the same documents. Suppose we reverse and remand with instructions that the Department of Education consider further evidence to be submitted by Mr. Merzai, including perhaps giving him a department hearing. What would be wrong with that? Well, the department certainly does object to that because of the precedence it would set for what we're dealing with here, which is evaluating a Title IV application submitted by an institution where there isn't a process established for the institution to receive a hearing every time we review and deny one of these applications. And that would be the implications that would come from that, that that's a separate process from the process that the department follows when, in fact, it does choose to debar an individual. Then it has proceedings. It provides a hearing. It has government-wide effect. It's much different than the consequences of reviewing an eligibility application, which I've indicated we do. Mr. Merzai considers your rejection of his application to be a de facto debarment. What's his remedy other than what he's done? He can reapply with another institution and provide information that satisfies the department as to his character for trustworthiness. He's got to buy another company. Well, at this stage, of course, he doesn't have, as far as I understand, any other school that he's seeking to obtain Title IV eligibility for. So we're dealing with what could happen for him in the future. As far as HPC, Hawaii Business College, is concerned, he's done at the Department of Education. They've told him we will not approve your application to be a Title IV producer. True? Yes, sir, and that school's been closed now for multiple years. There wouldn't be any way to resurrect that as an institution, although I guess he could start over again and call a new school, Hawaii Business College, submit an application. Is the closure of that school a matter of record in this case? Yes, sir, absolutely. So he'd have to start up with a new entity. Yes, sir. And what probability would there be that the DOE would say, well, now that you've got a new entity, we're going to look at this differently. We're not going to apply the 25 percent limit, and we're going to okay you? Well, I think the probability is very high that we would examine it very carefully, especially in light of this litigation. I think so. Let me ask you this. You didn't, when he was in business under CBC, when he bought 49 percent of CBC, you thought that was dandy. And then now you're saying he can't own more than 25 percent of HBC. Why was 49 percent of CBC okay? It didn't require any further hearings or any application. But 25 percent of HBC is not okay. Well, the circumstances there are that anybody, when they have an existing institution, can bring in new ownership up to 49 percent without triggering a loss of eligibility. Their application stays. They don't have to reapply at that stage. As a matter of law, they continue. Plus you haven't bought them yet. They, at that stage, simply continue to be in the programs. They have to report it, and we notify. And they notify us, and we duly record that there's been a change. But as a matter of law, once an institution has a change of ownership to 51 percent, so there's a change of control, then that triggers at that stage the loss of eligibility and the mandatory requirement for a new application. So there wasn't this change in position from the departments in that we approved 49 and then disapproved 51. We acknowledged 49, and when it became 100 percent, then the department had an application to review, and it followed its eligibility procedure and made its determination. What is the bottom line for this court's decision so far as you're concerned? The bottom line is that the Department of Education's decisions in reviewing eligibility applications are entitled to deference and that the district court judge properly provided the department's decision with deference, and that should be affirmed. When you say entitled to deference, do we look to see the basis, or do we just ignore that? No, I wouldn't ask you to ignore it, Your Honor. All right. And what is the basis here? I'm sorry. The basis for your conclusion is, at least he argues, an incident that has not been proved and is of no consequence because it's been settled more than three years. Right. Well, and again, the Department of Education's position on that is it has the right and the duty when it receives an application for someone to operate its fiduciary to look into that in detail to determine administrative capability and financial overfall. But I may be wrong, but I gather his point is if he had been disbarred, if he had not settled, if he had been disbarred, there's been sufficient passage of time that that disbarment wouldn't prevent him from proceeding with a new operation. He wasn't disbarred because it was settled. So that fact, instead of working to his advantage, works to his disadvantage. That's what I understand his argument to be. And what I hoped you would tell us is why that argument isn't valid. Well, Your Honor, the reason why the Department doesn't believe that argument is valid is because when the debarment itself was settled, the settlement was for purposes of resolving that debarment, as the document states and as the district court judge found. And there is a general reservation clause within that debarment, which may not have been as explicit as perhaps it should have been and perhaps will be in future instances. But certainly the Department did not intend to contract away its opportunity and its duty to evaluate an eligibility application submitted by an institution with a certain management structure as a result of that settlement agreement. But you're determining this denial based on an unalterable characteristic of Mr. Mirzai, that he at one time settled a claim where your allegations were that his company forged financial statements. That's unalterable as far as Mr. Mirzai is concerned, isn't it? The fact of it is. But people all the time in both civil and criminal context put forward evidence to say, I made a mistake, this is a one-time instance, these are all the ways my character has changed. You mean he can alter it by putting on a repentant suit? Absolutely. Absolutely, Your Honor. I mean, that's what we put forward here. I mean, does he have a hand to the Department of Education pounding his chest a little bit, saying mac lupa, and then you'll forgive him? We'll consider all of that information. Absolutely. As we have in a number of other cases. Well, you make an application the day after tomorrow, then you will give him a fair and full hearing, right? He won't receive a hearing, but we will give him a full and fair opportunity to present information to us, and we will consider it. Because that would be suitably repentant. That is a character, that trait that would work to his benefit, if he would. Let me see if I understand what you're saying. It is undisputed that forged documents were submitted while he was president of the university. What has not been proven is that he forged them. But nonetheless, he twice submitted forged documents. And that is what you are considering. Although whether or not it was proven that he himself forged them is irrelevant, because he submitted them as president of that university. Absolutely, Your Honor. The Department has never personally claimed that, as an institution, claimed that he personally forged those documents. It is the circumstances when you have a 100 percent owner that is submitting those when the company is operating as the Department's fiduciary, and once again he is looking to serve as a 100 percent owner and serve as the Department's fiduciary that we examine that conduct. Thank you. Thank you very much. Mr. Holt, you have a couple of minutes. Thank you, Judge Pia. To the point that was just made, we did not concede that these documents were definitely forgers, that they might be. We don't know how it happened. You'll notice in the record, though, there is a statement even from the party, Eric Jardstrom, who said his signature didn't look like his signature. He also noted that he had someone named Reza Sheikhai, a business partner, who had also been a business partner of Mr. Mirzai, and that he had talked to this Reza Sheikhai guy about it and he thought the government should follow up with him. The point is, if you look at all the evidence, it's possible that there's an explanation for how the forgery occurred. That's what happens at a hearing. Mr. Holt, we have to look at the record as it exists, and the record as it exists is that there was a settlement. If what you say is true, there never would have been a settlement. You would have said, these papers aren't forged, you do what you want, we're going. Understood. And that's what Judge Nelson asked you a little earlier, and now you're going back. No, no. My point is, if you read the debarment regulations, they say that just the fact that a cause arguably exists for debarment, meaning there's conduct that can be imputed to the individual, doesn't mean debarment occurs. There could be mitigating circumstances. In other words, Mr. Mirzai could put on evidence saying, I had no knowledge of that, I had nothing to do with it, I didn't authorize it. That's mitigating evidence. So what you want is a hearing, a debarment hearing. It should have happened years ago, but the case was dismissed with prejudice. No, what I want is an order from this court saying that this is over, they can't ever revisit it. Because they had their chance. They had their chance for a hearing, and they said, no, we're going to settle with you and put it behind you. In the art metal case, that's the case with the Navy contractor, the court quoted the Queen from Alice in Wonderland and said, in our system of justice, we don't use sentence first, verdict later. What they're doing in this case is saying to Mr. Mirzai, sentence forever, verdict never. You're never going to get your day in court. You're never going to have your chance to convince an independent fact finder. You heard Mr. Wolf say that. He said, you're not going to get a hearing, you can present the facts to us. Well, before Mr. Mirzai entered into that settlement agreement, what he had in front of him was a hearing. We heard different things. I think he said, he didn't say he wasn't going to get a hearing. He said, I'm saying we're going to consider it. He didn't say we've already considered and denied. He said we'd consider it. Well, I beg to differ with you on that. That's what I said. Maybe we misunderstood. Maybe I misunderstood. I think what he said was at this stage when you're determining whether someone is eligible, you don't get a hearing. You can submit some papers to us and we'll look at it, but you don't get a hearing. What Mr. Mirzai had in front of him back in 1998 and 1999 was a hearing in front of an independent fact finder. He gave that up believing all these allegations were dismissed and put behind him for good. If you've convinced us that there was a de facto debarment, isn't the remedy that we should order a reversal of instructions to hold a debarment? It is if you don't find, as I also argue, that the settlement agreement fully and finally and the dismissal of prejudice gets rid of this case and they can't even look at it at all. But if you find they can still look at it, then yes. That one you have a tougher road to hoe. I understand. But if you disagree with me on that, then yes, the remedy would be a hearing. In front of an independent fact finder and administrative law judge, not in front of officials of the U.S. Department of Education where you submit papers and affidavits and declarations. And what is the procedure under which that hearing would be held? Is it an order from this court that an administrative law judge from some federal agency be appointed? Yes. The U.S. Department of Education, through its Office of Administrative Actions and Appeals, AAAD Division, would appoint a judge. And that's what they do when there's a debarment complaint. What we're telling you is basically they're doing the equivalent of a debarment proceeding here without actually going through the debarment process. They're taking this integrity determination and applying it. Now, you heard Mr. Wolf say, well, we always get to look at these things. We always get to look at them. Well, sure they do. But in this case, they chose to try to debar this man for this integrity concern. He had his day in court. He gave it up believing it was gone for good. And now they want to come back and use it but not give him his day in court. So at a minimum, yes, he should have his day in court. Thank you, Your Honor. Thank you very much, Mr. Holt. Thank you very much, Mr. Wolf. The court will take a 15-minute recess at this time.
judges: Farris, Nelson D. W., Bea